UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANNETTE L. CHANDLER,              )
                                  )
           Plaintiff,             )
                                  )
     v.                           )   Civil Case No. 16-1439 (RJL)
                                  )
                                  )
MARTIN J. GRUENBERG, Chairman,    )
FEDERAL DEPOSIT INSURANCE         )
CORPORATION,                      )
                                  )
           Defendant.             )

**FILED**
**JUL 2 0 2017**
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(July 19, 2017) [# 9]

Annette L. Chandler ("Chandler" or "plaintiff"), proceeding *pro se*, brings this action alleging that defendant, Martin J. Gruenberg ("Gruenberg" or "defendant"), in his capacity as Chairman of the Federal Deposit Insurance Corporation ("FDIC" or "the Agency"), retaliated against her for her protected civil rights activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"). This matter is now before the Court on defendant's Motion to Dismiss [Dkt. # 9]. Upon consideration of the parties' submissions, defendant's motion is GRANTED and plaintiff's case will be DISMISSED with prejudice.[1]

---

[1] On February 6, 2017, plaintiff moved for leave to file an amended complaint [Dkt. # 14] in an attempt to bolster the facts supporting her claim of retaliation. There are no new factual allegations in her motion, however, that would alter my ruling in this Memorandum Opinion. Her motion is therefore DENIED as moot.

1

## BACKGROUND

Plaintiff is a former employee of the FDIC, having worked there from February 25, 1977 until her retirement on August 30, 2007. *See* Compl. at ¶¶ 4, 6; Def.'s Mot. to Dismiss ("Def.'s Mot."), Ex. A ("Investigative Report") at 3. Immediately prior to her retirement, plaintiff was serving as Investigative Specialist with the FDIC's Office of Inspector General. *See* Compl. at ¶ 6. Federick Gibson ("Gibson"), Acting Inspector General, was Chandler's second-level supervisor while she was employed with the FDIC. Def.'s Mot., Ex. E ("Final Agency Decision") at 3. During her time as an FDIC employee, plaintiff filed ten Equal Employment Opportunity ("EEO") administrative complaints and two civil actions against the Agency. *See* Def.'s Mot., Ex. B ("Pl.'s Aff.") at 3.

In 2009, after Chandler's retirement from the FDIC, Mir, Mitchel & Company ("MMC") contacted plaintiff and suggested that she apply for a position with the company. MMC is a Receivership Assistance Contractor ("RAC" or "contractor") who works with the FDIC to "provide services during bank closings, including post[-]closing activity." *See* Final Agency Decision at 2-3; Compl. at ¶ 9. Plaintiff applied for the position, and MMC hired her. Compl. at ¶ 9. From 2009 through 2013, however, plaintiff never received a work assignment from MMC, despite her repeated calls and emails seeking work. Compl. at ¶ 9; Investigative Report at 6. When plaintiff inquired about this, MMC allegedly told her that "there was no work to which she could be assigned." Compl. at ¶ 9.

In February of 2015, another FDIC contractor, the SolomonEdwards Group ("SEG"), contacted plaintiff and offered her a position on its contract as an RAC for the FDIC. *Id.* at ¶ 10. In this role, plaintiff would be tasked with working on the investigative team in bank closings. *Id.* Plaintiff accepted the position and was immediately assigned as an Investigative Technician for an FDIC contract to work on the closing of the Doral Bank in San Juan, Puerto Rico. *Id.* at ¶¶ 10-11. She travelled to Puerto Rico and began working with the SEG team on February 27, 2015. *Id.* at ¶11. Plaintiff alleges that, on March 23, 2015, her supervisor, Doug Thorpe ("Thorpe") approached her and told her that he had been ordered to terminate her employment. *Id.* at ¶ 12. She claims that he told her the order had not come from SEG management, but rather from the FDIC. *Id.* Although plaintiff continued to inquire about additional work assignments with SEG, she was never assigned another project. *Id.* at ¶ 13.

In support of her retaliation claim, plaintiff alleges that the FDIC "was and had been poisoning her prospects of working on its contracts in retaliation for her successful litigation of prior EEO complaints from when she was an employee of FDIC." *Id.* at ¶ 14. Plaintiff timely initiated the EEO process at the FDIC on May 1, 2015 by seeking counseling for her claims. *Id.*; Def.'s Mot., Ex. D ("EEO Counselor's Report") at 1. Because plaintiff's attempts to resolve the matter informally were unsuccessful, she filed a formal Discrimination Complaint on July 30, 2015. Def.'s Mot., Ex. C ("Acceptance of Formal Discrimination Complaint"). On March 23, 2016, the FDIC issued a Final Agency Decision, which found that Chandler "was not retaliated against as alleged in the complaint." Final Agency Decision at 6. Plaintiff subsequently filed the present action.

3

## **STANDARD OF REVIEW**

Although defendant has filed a motion to dismiss, the parties have presented materials outside the pleadings relied upon by the Court. Therefore, I will treat the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *House v. Salazar*, 598 F. Supp. 2d 89, 91 (D.D.C. 2009). A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And in deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## **ANALYSIS**

Where, as here, the record contains no direct evidence of retaliation, under the *McDonnell Douglas* burden-shifting framework, a plaintiff must establish a *prima facie* case of retaliation in order to succeed on a retaliation claim. *See White v. Washington Nursing Facility*, 206 F. Supp. 3d 137, 144 (D.D.C. 2016); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To do so, Chandler must show: (1) that she engaged in statutorily protected activity; (2) that the employer took a materially adverse action such that the action could well dissuade a reasonable employee from making or supporting a charge of discrimination; and (3) that there existed a causal link between the

4

two. *See Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). Defendant primarily argues that Chandler has failed to establish a retaliation claim because she has presented nothing more than a suspicion that she was retaliated against, which is insufficient to survive summary judgment. *See* Def.'s Mot. at 12. I agree. Specifically, it is plaintiff's failure to establish the second prong of her *prima facie* retaliation claim—that Gruenberg took a materially adverse action against her—that dooms her case.

To support her argument that the FDIC took an adverse employment action against her, plaintiff states that she "*believes*" her failure to receive work from MMC and SEG "resulted from FDIC's interference," which Chandler believes was motivated by her prior EEO activity. *See* Pl.'s Aff. at 4 (emphasis added). But plaintiff's mere belief that she was retaliated against, without more, is simply not enough. Indeed, the record is devoid of any evidence supporting Chandler's allegation that the FDIC's retaliatory interference prevented her from receiving work from its contractors. Instead, the record *affirmatively supports* defendant's assertion that the FDIC had absolutely no involvement in Chandler's failure to receive work from MMC and SEG. *See, e.g.*, Def.'s Reply to Pl.'s Opp. to Def.'s Mot. to Dismiss ("Def.'s Reply"), Ex. 1, Affidavit of Tad. J. Taber ("Taber Aff.") at 8 ("The decision regarding whether to hire or deploy an individual is made solely by the RAC," *not* the FDIC.); Def.'s Mot., Ex. L, Affidavit of James McConnell ("McConnell Aff.") at 4 ("There is no way FDIC could have interfered with [plaintiff's] employment because [the FDIC] do[es] not get to request or choose anyone [on their contracts]."). The record is clear that the FDIC has no involvement in deciding

5

who its contractors hire and fire, and Chandler has offered no evidence to suggest that the FDIC had any such involvement in her case.

As evidence of retaliation, Chandler proffers the fact that "the badge or (contractor) ID number (C-07816) issued to [her] by [SEG] was the same as that issued by [MMC]," and thus she concludes that the FDIC knew her ID number and retaliated against her through both employers. *See* Pl.'s Opp. to Def.'s Mot. to Dismiss ("Pl.'s Opp.") at 4. The record, however, clearly disproves Chandler's suspicion. Tad J. Taber, a Resolution and Receivership Specialist with the FDIC, stated in his affidavit that "[e]ach individual contractor is issued a contractor id number . . . [which] does not change. Once an individual receives a contractor number, he or she will retain that number regardless of the Receivership Assistance Contractor with whom he or she works. The name and contractor number . . . will follow that individual from contract to contract." *See* Taber Aff. at 1. It was therefore standard practice for Chandler to retain the same contractor number at both SEG and MMC, and Chandler's speculation of retaliation based on her contractor ID number falls far short of establishing a *prima facie* case. *See Brown v. Broadcasting Bd. of Governors*, 662 F. Supp. 2d 41, 49 (D.D.C. 2009) ("[Plaintiff] rests on nothing but unreasonable inferences, speculation and unsubstantiated allegations. None of these creates a genuine issue of material fact.").

Perhaps most fatal to Chandler's claim that the FDIC "interfered" with her employment is the fact that she was never *actually* employed by either MMC or SEG. Indeed, as Connie Dryden, Assistant Director for Investigations for the FDIC, stated, the fact that plaintiff received a contractor number "just means that she could be activated at

6

any point, but it was not a given that she would be given work." Def.'s Mot., Ex. I, Affidavit of Connie Dryden ("Dryden Aff.") at 3. And MMC's Senior Human Resources manager, Linda Day, similarly indicated that Chandler "was never employed with [MMC]." Def.'s Mot., Ex. F ("Linda Day Email"). As to SEG, Chandler's offer of engagement from SEG stated that the estimated duration of her engagement was "2-4 weeks; contingent upon client needs." Def.'s Mot., Ex. G ("Engagement Letter") at 1. Crucially, the engagement letter made clear that it did "not constitute an offer to employ [Chandler] for any particular length of time," and it specified that plaintiff was an "at-will employee." *Id.* at 2.

The record also indicates that SEG's decision to release plaintiff from its contract as the contract was winding down was consistent with its standard practice of letting employees go at the end of a contract period. For example, defendant presented evidence showing that, at the end of a contract period, the FDIC "requests the RAC contractor to release their employees based on the winding down of a particular work assignment associated with the closing." Dryden Aff. at 3. And for the SEG contract on which Chandler worked, plaintiff was one of twelve consultants who were released within a one-month period as the contract wound down. *See* Def.'s Mot., Ex. J ("SEG Email") at 1 ("[Chandler] and other members of the Investigation team were released in accordance with the normal wind down of their role on the FDIC engagement, as was anticipated and communicated in her offer letter."). Indeed, plaintiff's pre-exit clearance record for contractors did not indicate that she was terminated, but rather it stated that the "Type of Action" taken with respect to Chandler was "Employee Departure at Contract

7

Completion." Def.'s Mot., Ex. H ("Pre-Exit Clearance Record") at 1. This kind of action is standard practice for a RAC contractor as a project nears completion, and there is no evidence in the record that any kind of retaliatory animus motivated SEG's or MMC's employment decisions.

Finally, even if Chandler could establish that she suffered a retaliatory adverse employment action, her retaliation claim still fails because she has not established the third prong of a *prima facie* case of retaliation: a causal connection between the adverse action and her protected activity. To establish a causal connection, it is necessary that the officials making the adverse decision "had knowledge of [plaintiff's] protected activity at the time the alleged retaliation occurred." *Turner v. Shinseki*, 824 F. Supp. 2d 99, 122 (D.D.C. 2011); *see Taylor v. Chao*, 516 F. Supp. 2d 128, 137 (D.D.C. 2007) ("In order to show causation, a plaintiff must show that the official responsible for the alleged retaliatory act had knowledge of the protected activity."); *Bolden v. Clinton*, 847 F. Supp. 2d 28, 39 (D.D.C. 2012) ("If the officials responsible for an allegedly adverse employment action are unaware of the employee's prior EEO activity, that employee cannot establish a prima facie case of retaliation.").

Here, plaintiff has not even alleged that her decisionmakers were aware of her protected activity. Nowhere in plaintiff's complaint does she allege that the relevant RAC officials were aware of her protected activity during her time at the FDIC. While Gibson was aware of Chandler's EEO activity when she was an FDIC employee, he did not "[k]now anything about either of the contracts with MM&C or SEG," so Chandler cannot possibly show that Gibson's knowledge of her EEO activity impacted her

8

engagement with either RAC. Def.'s Mot., Ex. M, Affidavit of Frederick W. Gibson, Jr. ("Gibson Aff.") at 4. And in Chandler's sworn affidavit, she concedes that, while she was contracting for MMC, she "did not really even suspect . . . retaliation by FDIC officials," and that she "did not have solid proof of FDIC's involvement" in the contractors' employment decisions. Pl.'s Aff. at 6. Indeed, Chandler admits that she did not even *intend* to allege knowledge on the part of the RAC decisionmakers. *See id.* ("It is not my contention that MMC, LLC officials were necessarily aware of my earlier EEO activity."). Because Chandler has failed to establish knowledge of her protected activity on the part of the relevant officials, her retaliation claim necessarily fails.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss, construed as a Motion for Summary Judgement, is GRANTED and plaintiff's claim is DISMISSED with prejudice. A separate Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge